# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HAROLD WAYNE NICHOLS, | ) |
| Plaintiff, | ) |
| | ) Case No. 3:20-cv-00566 |
| v. | ) |
| | ) JUDGE TRAUGER |
| TONY PARKER, et al., | ) |
| Defendants | ) |

## MEMORANDUM AND ORDER

The plaintiff filed this lawsuit on June 30, 2020, asking the court to "enjoin Defendants Mays, Parker, John/Jane Does TDOC Employees from carrying out Mr. Nichols' August 4, 2020 execution because doing so would constitute a violation of his Constitutional and statutory rights." (Doc. No. 1 at 85–86.) Specifically, the plaintiff alleged throughout his Complaint that various consequences of conducting his execution "during a global pandemic" would violate his rights. (*Id.* at 56.)

On July 17, 2020, Tennessee Governor Bill Lee exercised his authority under the Tennessee Constitution to grant the plaintiff a reprieve from execution until December 31, 2020. (Doc. No. 29-1.) Under the rules of the Tennessee Supreme Court, that court will act to set a new execution date for the plaintiff sometime after December 31: "Where the date set by the Court for execution has passed by reason of a stay or reprieve, this Court shall sua sponte set a new date of execution when the stay or reprieve is lifted or dissolved." Tenn. Sup. Ct. R. 12(4)(E). Accordingly, the plaintiff does not currently have a scheduled execution date, and the defendants move to dismiss the case for lack of subject matter jurisdiction on the basis that there

is no longer a live case or controversy to adjudicate. (Doc. No. 28.)

A claim must present a real and present dispute for this court to have jurisdiction to consider it:

> The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions. Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.

*Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992) (punctuation and citations omitted). "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). A plaintiff basing a claim on an anticipated future injury must demonstrate that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 607–08 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The plaintiff argues that this case still presents a live, justiciable controversy because he "has a reasonable expectation that the actions complained of in his complaint will recur" and "continues to face execution during the global pandemic." (Doc. No. 31 at 1.) He also argues that his allegations about facing execution without a spiritual advisor in the execution chamber and about prison officials' failure to disclose any protocol specific to executions during a pandemic are unaffected by his reprieve. (*Id.* at 1–2.)

The court is not persuaded by the plaintiff's argument that he still faces execution during the pandemic. The Tennessee Supreme Court cannot set a new execution date until January 1, 2021. That date itself is almost five months from now. Right now there is no way to predict what future date the court will select for the execution or what the circumstances might be at that

time with regard to the COVID-19 pandemic. When the Tennessee Supreme Court re-set other executions due to the pandemic, it set them approximately ten months into the future. *See State v. Black*, No. M2000-00641-SC-DPE-CD (Tenn. June 12, 2020) (re-setting execution for April 8, 2021); *State v. Smith*, No. M2016-01869-SC-R11-PD (Tenn. April 17, 2020) (re-setting execution for February 4, 2021). Moreover, the history of execution dates most recently set by that court indicates that they are typically set at least two months apart. *See* Anita Wadhwani, *Tennessee Has Three More Executions of Death Row Inmates Scheduled in 2020*, Tennessean, Jun. 12, 2020, https://www.tennessean.com/story/news/2018/11/16/tennessee-death-row-inmates-six-executions-two-years/2026379002/ (last visited Aug. 10, 2020) (recounting execution dates set for August 4, 2020, October 8, 2020, December 3, 2020, and February 4, 2021). While there is no guarantee that the court will do the same in the plaintiff's case, this pattern does not support any assumption that the plaintiff's execution will be set for a date very soon after his reprieve expires. Any assumption that pandemic circumstances and consequent changes in prison operations will still prevail as the plaintiff nears his next execution date would be based on nothing but rank speculation. It certainly does not constitute the "substantial risk" required to make these claims ripe for review. *See Kiser*, 765 F.3d 601, 607–08.

The court is also not persuaded by the plaintiff's argument that his Complaint raises any claims not tied to the fact that his execution was scheduled to take place during the pandemic. In fact, six of the seven counts in the Complaint are expressly grounded on the pandemic. (Doc. No. 1 at 56 (alleging Fourteenth Amendment violation arising from "Executing Mr. Nichols on August 4, 2020, during a global pandemic"), 61 ("execution during the global coronavirus pandemic"), 65 ("Execution during the pandemic"), 68 ("execution under pandemic

conditions"), 71 ("execution under the conditions created by COVID-19"), 78 ("execution despite the COVID-19 pandemic").)

Only Count 1 of the Complaint does not expressly reference the pandemic in its caption. (*Id.* at 50.) But in that count, the plaintiff complains of the effects of a visitation ban imposed by the prison due to COVID-19, which prevented him from having otherwise expected visits with his minister that are necessary to his "preparing for his death." (*Id.* at 50–51.) He asserts that the State has no interest in proceeding with his execution "in the midst of the COVID-19 pandemic, and accordingly no justification whatsoever" for the alleged violation of his religious freedom. (*Id.* at 51.) He argues that the State has no compelling interest "in the enforcement of an arbitrary execution date in the middle of a pandemic" and that "[t]he date of the execution can . . . simply be moved to a later date." (*Id.* at 55–56.) His single reference to the absence of a spiritual adviser in the execution chamber seems only intended to support his claim about the lack of visitation with his advisor prior to the execution:

> At this time, not only does Tennessee not permit a spiritual adviser in the execution chamber . . . but as a practical matter is prohibiting any exercise of religion by Mr. Nichols before his scheduled August 4, 2020 execution. Mr. Nichols cannot take any of the steps he, as a Christian, sincerely believes necessary to prepare himself for death without meeting with his spiritual adviser, and he has been without such visitation for months and so has been irreparably deprived of the time and opportunity he would otherwise legally and morally have had.

(*Id.* at 56.) In the final paragraph of Count 1, the plaintiff asserts that the court should enjoin the corrections officials "from carrying out Mr. Nichols' August 4, 2020 execution and issue a Declaratory Judgment finding that to proceed with the planned August 4 execution would constitute a violation" of his religious rights. (*Id.*) The plaintiff acknowledges that, under normal circumstances, "the State's consistent practice has been to recognize and foster pastoral visits for a death row inmate." (*Id.* at 53.) Accordingly, this count is also tied directly to changes in prison

operations due to the pandemic and the impact of those changes on the plaintiff's preparation for imminent execution. That execution is no longer imminent, and, as the court has explained above, there is currently no basis on which to conclude that it is likely to occur during the height of the pandemic. Just as the plaintiff requested, his execution will "simply be moved to a later date." (*Id.* at 56.) The court does not find that any free-standing claim about the prohibition on spiritual advisers in the execution chamber is raised in the Complaint.[1]

The plaintiff also argues that there is a justiciable question in this case because the defendant correctional officials "continue to fail to disclose how the prison will carry out an execution during the pandemic." (Doc. No. 31 at 5.) But again, there is currently no basis to conclude that the plaintiff will be executed under circumstances requiring any deviation from the ordinary execution protocol.

Finally, the plaintiff argues that if the circumstances underlying his claims are repeated, his claims may evade review, because the defendants' "actions . . . may occur and abate in a short period of time." (*Id.* at 9.) But the plaintiff will presumably have notice of his new execution date months in advance, at a time when prevailing circumstances will be some indicator of whether pandemic precautions will still affect the preparation and execution. He expected to obtain relief when he filed his Complaint on June 30, 2020, to enjoin an August 4, 2020, election, and he has not established that a similar timeline would not be feasible in the future if it were necessary. The Federal Rules of Civil Procedure provide for temporary restraining orders and preliminary injunctions in cases presenting exigent circumstances. *See* Fed. R. Civ. P. 65. Accordingly, the court is not persuaded that the plaintiff's claims are likely to evade review if they become ripe again after the re-setting of his execution.

---

[1] Moreover, it appears that any such claim would also be unripe in light of the plaintiff's acknowledgment that he has a pending request with prison officials to be allowed to have his spiritual advisor present. (Doc. No. 1 at 44.)

For these reasons, the defendants' Motion to Dismiss (Doc. No. 28) is **GRANTED**, and this case is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge